## UNITED STATES OF AMERICA
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Clarence O. Hopkins, | ) | |
| Petitioner, | ) | |
| | ) | No. 21 CV 50083 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Anthony Willis, | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Petitioner Clarence Hopkins is serving an 85-year sentence after being convicted of attempted first-degree murder, aggravated discharge of a firearm, unlawful possession of a weapon by a felon, and being a habitual criminal. Before the Court is Mr. Hopkins' petition for a writ of habeas corpus under 28 U.S.C. § 2254 seeking to vacate his conviction. For the following reasons, his petition [1] and amended petition [49] are denied.

### BACKGROUND

For purposes of habeas review, the Court presumes the correctness of the state court's factual findings, including the facts set forth in the state appellate court's opinion on Mr. Hopkins' direct appeal, in the absence of clear and convincing evidence to the contrary presented by Mr. Hopkins. *See* 28 U.S.C. § 2254(e)(1); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020). The following facts are taken from the state appellate court's opinion in *People of the State of Ill. v. Hopkins*, 2015 IL App (3d) 130565-U (Ill. App. Ct. Sept. 30, 2015).

At trial, Shaevon Collins ("Mr. Collins") testified that in early 2009 he and his cousin Tyree Collins ("Tyree") got into a fight with Mr. Hopkins, beat him, and then drove away, leaving him in a field. Mr. Collins later heard rumors that Mr. Hopkins wanted to "get" him.

Mr. Collins testified that two years later on the evening of June 30, 2011, he was walking to a friend's house in Sterling, Illinois, when he heard someone walking in an alley. He turned and saw Mr. Hopkins, who said, "What is up now?" and "I told you I was going to get you." Mr. Collins threw a cup of liquor in Mr. Hopkins' face, after which Mr. Hopkins pulled a gun from his waist. Mr. Collins grabbed Mr. Hopkins' forearm and pushed it down. Mr. Hopkins started firing the gun, at which point Mr. Collins thought Mr. Hopkins was trying to kill him. Eight bullets struck Mr. Collins including in his arm, leg, pelvis, femur, and penis. When police arrived at the scene, Mr. Collins told them that "Blue" shot him, and that "Blue" was Mr. Hopkins' nickname. After he was transported to the hospital, Mr. Collins told a detective that Mr. Hopkins shot him. Mr. Collins underwent surgery that night, during which doctors inserted rods in his arm and leg. He anticipated needing more surgeries in the future.

An officer at the scene, Franklin Hopes, testified that Mr. Collins had visible gunshot wounds and spent shell casings were nearby. Mr. Collins told him that Mr. Hopkins had shot him, and that a cellphone lying on the ground nearby belonged to Mr. Hopkins.

Another officer testified that she recovered the cellphone from the scene, obtained three fingerprints from it, and sent it to a crime lab. The crime lab scientist testified that the prints matched Mr. Hopkins'.

Mr. Hopkins' girlfriend at the time of the shooting, Tara Walker, testified that shortly after midnight on the early morning of July 1, 2011, Mr. Hopkins called asking for a ride. Ms. Walker picked him up and drove him to Chicago. Ms. Walker testified that Mr. Hopkins normally carried two cellphones, but that night had only one and told her that the other was missing. While in Chicago, Mr. Hopkins got a text from a friend in Sterling telling him about a shooting there. When Ms. Walker asked him if he had shot Mr. Collins, Mr. Hopkins replied, "Allegedly I shot Poochie," Mr. Collins' nickname.

Tyree's girlfriend, Shanti Kendrick, testified that she was in the car with Tyree and Mr. Collins the day in early 2009 that they kicked Mr. Hopkins out of the car and left him in a field. She also described another incident while in the car with Tyree: on September 10, 2009, another car stopped in the middle of the road and started shooting into her car, leaving her with a gunshot wound on her arm. She couldn't identify the shooter from the September 10, 2009, incident, but was able to identify the car including its license plate number. After running the plate number, police told her it belonged to Mr. Hopkins. Mr. Hopkins was charged with and pleaded guilty to aggravated battery of Ms. Kendrick without a firearm, and the court admitted into evidence a certified record of conviction for that offense.

Mr. Hopkins did not testify at his trial.

In addition to witness testimony, the evidence at trial included certified copies of two of Mr. Hopkins' prior drug convictions, one for possession of a controlled substance with intent to deliver and the other for delivery of a controlled substance, both Class 1 offenses. The court instructed jurors that "[y]ou will consider that those elements have been proved beyond a reasonable doubt for any offense for which they are an element." The parties stipulated to additional facts, including medical reports that Mr. Collins suffered multiple gunshot wounds to numerous areas of his body, that he underwent emergency surgery to treat the wounds and repair fractures to his leg bones, and that doctors believed his injuries were life threatening and would cause lifelong disabling effects. The parties also stipulated that at the time of the shooting, Mr. Hopkins was serving a term of mandatory supervised release.

The jury found Mr. Hopkins guilty of all five charges against him: attempted first-degree murder, armed violence, aggravated discharge of a firearm, unlawful use of a weapon by a felon, and being an armed habitual criminal. The jury also determined three specific factual questions presented to it: it found that Mr. Hopkins had previously been convicted on two or more occasions of a Class 2 or greater state controlled substance offense, that he was over the age of 21 on the date of the incident, and that he was serving a term of mandatory supervised release on the date of the incident. At sentencing the state court merged his convictions for armed violence

and aggravated discharge of a firearm into the conviction for attempted first-degree murder, and sentenced Mr. Hopkins to 55 years imprisonment on the attempted first-degree murder conviction, to run consecutive to concurrent terms of 30 years each for the unlawful use of a weapon by a felon and armed habitual criminal convictions.

Mr. Hopkins obtained new counsel and filed motions for a new trial and reconsideration of his sentence. He raised several arguments. First, he argued that the trial court erred when it denied his motion to dismiss the armed habitual criminal charge on speedy trial grounds because the charge was added three months after he was taken into custody and so the delay attributable to him on the initial charges were not attributable to him on the new charges. Second, he argued that trial counsel was ineffective for failing to stipulate to his prior convictions to keep the nature of those offenses from the jury. Third, he argued that the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) by applying a 25-year sentencing enhancement for the attempted murder conviction because it failed to instruct jurors on all the elements required for the enhancement, specifically, that he (1) discharged a firearm, (2) proximately causing great bodily harm. Finally, he argued that the trial court erred entering judgment on both the unlawful use of a weapon by a felon and armed habitual criminal convictions because unlawful use of a weapon by a felon is included in the armed habitual criminal offense. The court accepted that final argument and vacated the sentence for the unlawful use of a weapon conviction, but denied the remainder of the motions and entered an amended sentencing order.

Mr. Hopkins filed a direct appeal, raising the following arguments: (1) the trial court erred when it denied his motion to dismiss the armed habitual criminal charge on state speedy trial grounds; (2) trial counsel was ineffective for failing to stipulate to his prior convictions, and for the cumulative effect of not only failing to stipulate to the prior convictions but also by failing to raise (a) a relevance objection to Mr. Collins' testimony about his personal background and babysitting job, (b) a hearsay objection to Mr. Collins' testimony that he heard rumors that Mr. Hopkins was out to get him, (c) an lay medical opinion objection to Officer Hope's testimony that when he arrived at the scene Mr. Collins was bleeding out, (d) a hearsay objection to Ms. Kendrick's testimony identifying Mr. Hopkins as her attacker because it was based on what officers told her, and (e) failing to raise an *Apprendi* objection to the 25-year sentencing enhancement; and (3) the trial court violated *Apprendi* when it imposed the 25-year sentencing enhancement without having given a corresponding jury instruction. The appellate court agreed that Mr. Hopkins did not receive a speedy trial on the armed habitual criminal charge and vacated his conviction on that charge. With that conviction gone, the appellate court reinstated the conviction for unlawful use of a weapon by a felon. It also affirmed the remainder of Mr. Hopkins' convictions and sentence. Although the appellate court found trial counsel's failure to object to Ms. Kendrick's hearsay identification of him as her attacker "troubling and clearly deficient," it concluded that Mr. Hopkins had not established that he was prejudiced by that or any of the other alleged errors because the properly admitted evidence of his guilt was overwhelming. *Hopkins*, 2015 IL App (3d) 130565-U ¶¶ 39-41. It also found that Mr. Hopkins had forfeited his argument that the trial court violated *Apprendi* because his trial counsel never objected at sentencing, and that no plain error occurred because it was convinced jurors would have found the relevant facts based on other jury instructions and the overwhelming evidence. Mr. Hopkins sought leave to appeal his case to the Illinois Supreme Court, raising his ineffective assistance of trial counsel and *Apprendi* arguments, dropping the speedy trial argument, and

adding a new argument that the trial court erred by admitting evidence of his prior drug offenses because they were relevant only to the armed habitual criminal charge, which the appellate court dismissed on speedy trial grounds. The Illinois Supreme Court denied his petition for leave to appeal.

Mr. Hopkins then filed a *pro se* postconviction petition, raising the following arguments: (1) trial counsel was ineffective for failing to investigate evidence that Mr. Hopkins acted in self-defense; and (2) direct appeal counsel was ineffective for not raising an argument that *all* of the charges against Mr. Hopkins should be dismissed on speedy trial grounds, rather than limiting his speedy trial argument to the unlawful use of a weapon by a felon charge. The state trial court dismissed the petition. On appeal, Mr. Hopkins argued only that direct appeal counsel was ineffective for not raising a speedy trial argument as to all his pending charges. The appellate court concluded that the speedy trial argument was meritless, and so direct appeal counsel was not ineffective for failing to raise it. *People v. Hopkins*, 161 N.E.3d 1161, 1168 (Ill. App. Ct. 2020). Mr. Hoskins filed a petition for leave to appeal with the Illinois Supreme Court arguing only that the Appellate Court erred when it rejected his speedy trial argument on the merits; he did not raise the related ineffectiveness of direct appeal counsel argument. The Supreme Court denied his petition.

In addition, Mr. Hopkins filed two additional petitions with the state trial court seeking to set aside his convictions for armed violence and unlawful use of a weapon by a felon, arguing that the statutes that made that conduct criminal were unconstitutional. The trial court denied both petitions. It denied the petition to set aside his conviction for armed violence because that conviction had been merged into his conviction for attempted murder. Docket for 2011CF237 (Circuit Court for the Fourteenth Judicial Circuit, Whiteside County), Dkt. 60, Ex. 14 at 1 (docket entry of Feb. 16, 2021). It denied the petition to set aside his conviction for unlawful use of a weapon by a felon because it was the appellate court that reinstated that conviction. *Id.* There is no suggestion in the record that Mr. Hopkins appealed that order.

Mr. Hopkins then filed his federal habeas petition under 28 U.S.C. § 2254. In it he raises the following 17 numbered grounds for relief:

1. direct appeal counsel was ineffective for seeking dismissal of only the unlawful use of a weapon by a felon charge, rather than all charges, on speedy trial grounds;

2. trial counsel was ineffective for failing to raise a hearsay objection to Ms. Kendrick's testimony identifying Mr. Hopkins as her attacker, which was based on what officers told her;

3. the trial court erred applying a mandatory 25-year sentencing enhancement for the attempted murder conviction in violation of *Apprendi* because it failed to instruct jurors to find each of the elements necessary to apply the enhancement beyond a reasonable doubt;

4.      trial counsel was ineffective for failing to raise a self-defense argument, both at trial by failing to request a jury instruction on self-defense and/or attempted manslaughter, as well as at sentencing for failing to raise self-defense as a mitigating factor.  In addition, in post-conviction proceedings, the circuit court erred by not accepting as true his allegation that Mr. Collins attacked him first;

5.      the trial court made an objectively unreasonable determination of facts given inconsistencies between Mr. Collins' statements to police and his trial testimony about (1) when he first realized Mr. Hopkins had a gun, and (2) what the gun looked like;

6.      counsel in Mr. Hopkins' post-conviction appeal was ineffective for not raising arguments made by Mr. Hopkins in his *pro se* petition about inconsistencies in the trial testimony of the state's witnesses;

7.      the trial court denied him due process when it admitted other crimes evidence of prior drug possessions as substantive evidence against him;

8.      the trial court denied him his rights to a fair and impartial jury when it allowed (1) Ms. Kendrick's identification of him based on hearsay; (2) lay medical opinions from Mr. Collins and Officer Hope; and (3) Mr. Collins' testimony about his own good character;

9.      the trial court denied him due process because the evidence at trial was insufficient to prove beyond a reasonable doubt that he intended to kill Mr. Collins;

10.     the trial court denied him due process because the evidence at trial was insufficient to prove that he possessed a firearm;

11.     he repeats ground 3;

12.     the trial court denied him due process by sentencing him to 30 years on the unlawful possession of a weapon by a felon conviction based on prior felony drug convictions;

13.     the trial court denied him denied due process when he was convicted of being a felon in possession of a firearm in violation of the Second Amendment;

14.     trial counsel was ineffective for (1) failing to preserve grounds 2, 3, 4, 5, 7, 8, 11 and 13 for appellate review; (2) failing to investigate and present a self-defense theory at trial; and (3) stipulating that Mr. Hopkins had been arrested and in custody for four months fewer than he had been;

15.     counsel for Mr. Hopkins' post-trial proceedings was ineffective for failing to investigate and develop a record in support of grounds 4, 5, 9, 10, 12 and 14;

16.     counsel for Mr. Hopkins' direct appeal was ineffective for failing to (1) raise grounds 9, 10, 12, 13, and 15; (2) argue that trial counsel's errors were presumptively prejudicial; and (3) understand the law of forfeiture; and

17.     trial counsel's ineffectiveness as to grounds 2, 4, 5, 7, 8 and 14 cumulatively prejudiced him because, but for the errors, the evidence would have shown that he acted in self-defense.

## ANALYSIS

A federal district court may grant habeas relief to a state prisoner only if the state court's adjudication of the prisoner's claims either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2). A state court's decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" from the Supreme Court's. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The "reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005) (citing *Williams*, 529 U.S. at 411-12). "[A] state court's determination of factual issues is presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence." *Id.* at 603 (citing 28 U.S.C. § 2254(e)(1)).

To obtain habeas relief under 28 U.S.C. § 2254, a state inmate must first fully exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The duty to exhaust includes the duty to provide a state court with a fair opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). Fair presentment also requires the petitioner to "assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings." *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) (internal quotation marks and citation omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). Failure to first provide the state court the opportunity to correct any constitutional errors constitutes a procedural default. *Id.* at 1026. Claims are also considered procedurally defaulted—and, therefore, not

cognizable on federal habeas review— when they are denied by a state court "based on an adequate and independent state procedural rule." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (internal quotation marks and citation omitted).

A petitioner may not pursue a procedurally defaulted claim under 28 U.S.C. § 2254 unless he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (internal quotation marks and citation omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

## I. *Procedural Default*

To avoid procedural default of a claim, Mr. Hopkins must have first presented it through one complete round of review during either his criminal proceeding or in his post-conviction proceeding.

To review, on direct appeal he raised the following three claims: (1) lack of a speedy trial on the armed habitual criminal charge; (2) ineffectiveness of trial counsel for failing to stipulate to prior offenses, both standing alone and in combination with other failures such as failing to raise various evidentiary objections and failing to raise an *Apprendi* objection to the 25-year sentencing enhancement; and (3) the *Apprendi* argument itself. Of note is that Mr. Hopkins did not argue that the trial court erred by admitting evidence of his prior qualifying prior convictions or the other evidence he contends counsel should have objected to, such as Mr. Collins' testimony about his own good character and hearing others say that Mr. Hopkins was out to get him, Officer Hope's lay medical opinion, or Ms. Kendrick's hearsay identification of him. Rather, he argued only that counsel was ineffective for failing to object to any of that evidence. *See McGhee*, 900 F.3d at 853 (a claim that counsel was ineffective for failing to pursue a constitutional issue is "'a claim separate and independent'" of the constitutional issue itself) (quoting *Lewis*, 390 F.3d at 1026)). He prevailed on his speedy trial argument, and in his petition for leave to appeal to the Illinois Supreme Court raised three issues. Two were his claims that trial counsel was ineffective and that the trial court violated *Apprendi*. The third was a claim he did not raise on direct appeal: the trial court erred by admitting evidence of his prior drug offenses because they were relevant only to the armed habitual criminal charge, which the appellate court dismissed on speedy trial grounds. So on direct appeal, the only two arguments he raised through each level of review were (1) ineffectiveness of trial counsel, and (2) *Apprendi*.

In his post-conviction petition, he raised the following claims: (1) direct appeal counsel was ineffective for failing to seek dismissal of *all* charges on speedy trial grounds; and (2) trial counsel was ineffective for failing to investigate evidence that he shot Shaevon in self-defense. On appeal, Mr. Hopkins dropped the self-defense claim and argued only that direct appeal counsel was ineffective for failing to seek dismissal of all counts on speedy trial grounds. The appellate court held that any argument seeking dismissal of counts other than the armed habitual criminal charge on speedy trial grounds would have been meritless and so counsel was not ineffective for failing to raise it. In his petition for leave to appeal to the Illinois Supreme Court Mr. Hopkins dropped the ineffective assistance of counsel claim and argued only that the appellate court erred when it concluded any argument seeking dismissal of counts other than the armed habitual criminal charge on speedy trial grounds would have been meritless. Again, as discussed in the previous paragraph, a claim that counsel was ineffective for failing to raise a constitutional issue is a claim separate and independent of the constitutional issue itself. *McGhee*, 900 F.3d at 853. Because his petition for leave to appeal did not re-raise Mr. Hopkins' ineffectiveness of direct appeal counsel argument, he presented no argument in his post-conviction proceeding through each level of review.

As a result, Mr. Hopkins has procedurally defaulted every ground except the two he saw all the way through in his criminal proceeding and direct appeal: (1) ineffectiveness of trial counsel for failing to stipulate to prior offenses, for failing to object to various bits of witness testimony, and for failing to object to the jury instruction he contends violated *Apprendi*, and (2) that the trial court violated *Apprendi* by giving the allegedly inadequate jury instruction.

The government has argued alternatively that some of the procedurally defaulted claims are also meritless and/or untimely. But the Court need not reach the merits or timeliness of those claims given that they are procedurally defaulted.

Because he procedurally defaulted all but two of the grounds he raises in his § 2254 petition, Mr. Hopkins may proceed on only those two grounds, and the Court limits the rest of its discussion to only those two grounds: (1) ineffectiveness of trial counsel; and (2) *Apprendi*. The Court begins with the second of those two grounds.

### III.    *Apprendi*

In its decision on direct appeal, the Illinois Appellate Court found that Mr. Hopkins forfeited his *Apprendi* argument because his attorney failed to object to the lack of a jury instruction on the 25-year sentencing enhancement. *See Hopkins*, 2015 IL App (3d) 130565-U ¶ 45. Indeed, the appellate court noted that he had conceded that the issue was forfeited. *Id.* In addition to occurring when a petitioner fails to raise an argument through each level of state court review, procedural default occurs when a state court decides an issue on adequate and independent state grounds. *See Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021). Forfeiture is such a ground. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) ("when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (*i.e.*, because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds."). Although

the Illinois Appellate Court went on to discuss Mr. Hopkins' *Apprendi* argument under plain error review, that is of no moment to whether it decided the *Apprendi* issue on an adequate and independent state procedural ground. *Id.* at 592 ("where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits.")). Because the Illinois Appellate Court rejected Mr. Hopkins' *Apprendi* argument as forfeited, the issue is now procedurally defaulted.

In any event, Mr. Hopkins' *Apprendi* argument is unavailing. Under 720 ILCS 5/8-4(c)(1)(D), a defendant is guilty of a Class X felony and subject to an additional term of imprisonment of at least 25 years for an "attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person." Under *Apprendi*, any fact (other than a prior conviction) that increases the penalty for a crime beyond the maximum penalty that may be imposed without that fact must be proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490.

On direct appeal the state conceded the *Apprendi* error. State's Direct Appeal Brief [Dkt. 60, Ex. 4] at 19. However, even when an *Apprendi* error occurs, the petitioner is not entitled to habeas relief if the error was harmless. *See Washington v. Recuenco*, 548 U.S. 212, 220 (2006). The error was harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). As the Illinois Appellate Court explained, jurors did find beyond a reasonable doubt that Mr. Hopkins "knowingly discharged a firearm" because that was part of the instruction for the aggravated discharge of a firearm charge of which they found him guilty. *Hopkins*, 2015 IL App (3d) 130565-U ¶ 51. The jury also found beyond a reasonable doubt that Mr. Hopkins had "cause[d] great bodily harm" because that was part of the instruction for the armed violence charge of which they found him guilty. Trial Transcript [Dkt. 60, Ex. 2] at 362. Although the armed violence instruction required jurors to determine only that Mr. Hopkins possessed a firearm when he caused great bodily harm rather than that he personally discharged it causing great bodily harm, there was no evidence that Mr. Hopkins caused Mr. Collins great bodily harm by any means other than with the firearm he discharged, which is as Mr. Collins testified. Accordingly, it is beyond a reasonable doubt that, had jurors been properly instructed, they would have found each of the elements required under 720 ILCS 5/8-4(c)(1)(D), and therefore the failure to provide that instruction was harmless.

## III. Ineffectiveness of Trial Counsel

The ineffective assistance of trial counsel grounds Mr. Hopkins raises in his § 2254 petition that are not procedurally defaulted are: (1) trial counsel was ineffective for failing to object to Ms. Kendrick's hearsay identification of him (Ground 2); (2) trial counsel was ineffective for failing to object to the jury instruction he contends violated *Apprendi* (within Ground 14); (3) trial counsel was ineffective for failing to stipulate to his prior convictions (within Ground 14); (4) trial counsel was ineffective for failing to object to lay medical opinions from Mr. Collins Collins and Officer Hope (within Ground 14); (5) trial counsel was ineffective for failing to object to Mr. Collins' testimony about his own good character (within Ground 14);

and (6) trial counsel was ineffective based on the cumulative effect of each of those failures (Ground 17).

In its decision on his direct appeal, the Illinois Appellate Court acknowledged each of those ineffective assistance of counsel arguments except for the *Apprendi*-related one, concluded that trial counsel was "clearly deficient" for failing to object to Ms. Kendrick's hearsay identification, but determined that it need not address the allegations of deficiencies further because Mr. Hopkins had "suffered no prejudice in light of the overwhelming and properly admitted evidence of his guilt." *Hopkins*, 2015 IL App (3d) 130565-U ¶ 41.

As the state appellate court correctly noted, ineffective assistance claims are governed by the two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Mr. Hopkins must demonstrate both that (1) "counsel's performance was deficient," *i.e.*, he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense," *i.e.*, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The state appellate court resolved Pearson's ineffective assistance claim on *Strickland*'s prejudice prong, which it was entitled to do. *See id.* 697. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") To establish prejudice, Mr. Hopkins needed to demonstrate a reasonable probability that, but for trial's counsel performance, the result of the proceeding would have been different. *Id.* at 687. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. The bar for establishing that a state court's application of *Strickland* is unreasonable is high. *See Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2002). In particular, a state court's determination that a defendant was not prejudiced by his trial counsel's alleged ineffectiveness is entitled to great weight. *See Gilbreath v. Winkleski*, 21 F.4th 965, 991 (7th Cir. 2021). As the Supreme Court has noted, the "standards created by *Strickland* and § 2254(d) are both 'highly differential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

On habeas review under the doubly deferential standard, this Court cannot conclude that the Illinois Appellate Court's determination that Mr. Hopkins was not prejudiced in the light of the overwhelming, properly admitted evidence of his guilt was unreasonable. As the appellate court recounted, the properly admitted evidence included testimony that Mr. Collins had previously beaten Mr. Hopkins and left him stranded, that Mr. Collins later saw him in an alley and that Mr. Hopkins had told him, "I told you I was going to get you," that Mr. Collins observed Mr. Hopkins pull a gun and shoot him and the circumstances surrounding and after the shooting, that police recovered Mr. Hopkins' cellphone from the crime scene, and that he normally carried two cellphones but after the incident had only one on him. In light of this evidence, it was not unreasonable for the Illinois Court of Appeals to conclude that Mr. Hopkins was not prejudiced by any of trial counsel's alleged errors, singly or in combination. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

- 10 -

As noted above, the Illinois Appellate Court's decision did not explicitly address Mr. Hopkins' argument that trial counsel was ineffective for failing to make an *Apprendi* objection to the 25-year sentencing enhancement. Because the argument was fairly presented in his direct appeal, the Illinois Appellate Court is presumed to have adjudicated it along with his other arguments when it concluded none prejudiced his defense. *See Keith v. Schaub*, 772 F.3d 451, 454 (7th Cir. 2014) ("A claim has been 'adjudicated' if it was presented and rejected, whether or not the state court chose to give reasons or indeed even to mention the contention."). However, even in the absence of that presumption, Mr. Hopkins cannot establish any prejudice from trial counsel's failure to raise an *Apprendi* objection because, for the reasons detailed above, it is beyond a reasonable doubt that jurors determined all of the facts needed to support the 25-year sentencing enhancement.

## IV. Excusing Procedural Default

As noted above, most of the grounds Mr. Hopkins raised in his § 2254 petition have been procedurally defaulted. A procedural default may be excused if he can show (1) cause for the default and resulting prejudice from the alleged constitutional violation, or (2) a fundamental injustice tantamount to actual innocence. *See Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991).

Among the 17 grounds he has raises in his § 2254 petition are ones in which he contends that the attorneys in his state proceedings were ineffective for failing to raise various argument, which has now led to the procedural default of those arguments. For instance, in ground 16 he contends that his direct appeal counsel was ineffective for failing to argue self-defense, insufficiency of the evidence, obtain dismissal of the firearm counts under the Second Amendment, and for failing to preserve several other arguments. In ground 15 he raises a similar arguments about counsel in his post-trial proceedings, and in ground 6 about his post-conviction counsel. A claim that counsel was ineffective for failing to preserve claims by failing to raise them in state court might supply cause for the procedural default of those claims. *See Lewis*, 390 F.3d at 1026. But to excuse a procedural default, that claim of ineffective assistance of counsel must also have been presented at each level of state review. *See id.* ("a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim."). Mr. Hopkins did not raise any of these ineffective assistance of counsel claims all the way through one level of review in any of his state court proceedings, and so they too are procedurally defaulted and cannot serve as cause. In addition, his claim of ineffectiveness of post-conviction counsel is not cognizable under 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

As for evidence of Mr. Hopkins' actual innocence, he contends had his trial counsel effectively investigated his case, he would have found and presented evidence that Mr. Hopkins acted in self-defense, including that he did not possess a gun that evening, Mr. Collins brought the gun and threatened to kill him with it, that he grabbed the gun and shot Mr. Collins with it in self-defense, that he dropped the gun and ran from the scene afterwards, and that Mr. Hopkins' girlfriend, Juante Stinson, could have provided corroborating testimony. Amended Petition [49]

at 93-94. But Mr. Hopkins presents no affidavit from Ms. Stinson on what her testimony would have been. And his contention that he dropped the gun and fled from the scene that he offers in support of his actual innocence argument, *id.* at 94, is contradicted by his argument in ground 10 that there was insufficient evidence he possessed a firearm because "there was no evidence that the object Collins testified he saw Hopkins removing from his waist band was recovered at the scene and inventoried by police," *id.* at 88. All Mr. Hopkins is left with is self-serving arguments that he acted in self-defense. But to pass the high bar of establishing actual innocence, he needs to present "documentary, biological (DNA) or other powerful evidence; perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013). Self-serving statements do not clear that bar. *Id.*; *see also Hubbard v. Pinchak*, 378 F.3d 333, 341 (3d Cir. 2004) ("To allow Hubbard's own testimony that he proffers (supported by no new evidence) to open the gateway to federal review of claims that have been procedurally defaulted under state law would set the bar for 'actual innocence' claimants so low that virtually every such claimant would pass through it.").

## CONCLUSION

For the reasons given, Mr. Hopkins' petition [1] and amended petition [49] under 28 U.S.C. § 2254 are denied.

Under Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).

The Court's denial of Mr. Hopkins' habeas petition relies on settled precedent, and its application of this precedent to the claims in his petition does not present difficult or close questions. Accordingly, the Court declines to issue a certificate of appealability.

Date: March 10, 2025　　　By: _____

Iain D. Johnston
United States District Judge